IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JOYCE LAVAUN BROWN, | ) | Case No. 07-20112 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JOYCE LAVAUN BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 07-2010 |
| | ) | |
| AMERICAN EDUCATION SERVICES, INC., ET AL. | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this adversary proceeding, plaintiff Joyce LaVaun Brown ("Debtor") seeks a determination pursuant to 11 U.S.C. § 523(a)(8) that her student loan debt owed to defendant Educational Credit Management Corporation ("ECMC" or "Defendant") should be discharged for the reason that excepting the debt from discharge would impose upon her an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is dischargeable pursuant to § 523(a)(8).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor seeks a discharge of her liability on a consolidated loan executed in March 2006 in the amount $96,323.91. Defendant's Ex. 17, para. 4. The balance on that indebtedness as of September 5, 2007 was $103,609.04. Defendant's Ex. 17, para. 5. The loans consolidated were taken to finance a Bachelor's Degree in Psychology Debtor completed in 2003 and a Master's Degree in Criminal Justice obtained two years later.

Debtor is a 64-year-old woman with no dependents who lives alone. She is currently unemployed, although until recently, and for approximately three years, worked as an assistant manager at a local Border's retail book store. Although she has conducted an extensive job search, she has not been able to find employment in a position related to either of her fields of study. She testified to having sought employment in many places including the judicial system and other government agencies, and with lawyers, physicians and insurance companies.

After completion of her last degree in 2005, Debtor sought and obtained a one-year deferment on payment of her loan. At the end of the deferment period, she filed her bankruptcy proceeding. She has made no payments on the consolidated loan.

## II. DISCUSSION

### A. Applicable Legal Principles on Determination of Undue Hardship

Debtor contends that it would be an undue hardship for her to repay the remaining amount due on her student loans. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001);

*Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981). Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts. In this Circuit, the applicable standard is the "totality of the circumstances" test. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004). In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." On one end of the spectrum, it is clearly not enough for a debtor simply to demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003). A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition. *See Stanley*, 300 B.R. at 817. On the other hand, it is not necessary that

a debtor live in abject poverty in order to demonstrate undue hardship and obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818. A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

**B. Analysis of the Totality of the Circumstances**

**1. Past, Present and Reasonably Reliable Future Financial Resources**

The Court must first consider the Debtor's past, present and reasonably reliable future financial resources. As noted above, Debtor is presently unemployed. Accordingly, her only current sources of income are Social Security and unemployment compensation. From Social Security, she presently receives the sum of $380.00 per month. That is reduced from $473.00 a month, the $93.00 differential being a monthly agreed offset to compensate Social Security for an alleged overpayment in the previous year. When the overpayment is satisfied, her monthly payment will again return to $473.00. She now receives $215.00 per week (approximately $931.67 per month) in unemployment compensation benefits which she may receive for a maximum of 26 weeks and had received for approximately 11 weeks as of the time of the trial. Accordingly, in the not too distant future, that source of income will evaporate.

Her income tax returns indicate that her adjusted gross income in the year 2005 was $13,486.00 and she received a tax refund of approximately $1,242.00. Adjusted gross income was $21,377.00 in 2006 with an income tax refund of $826.00. Her initial schedule of income (Schedule I) showed gross monthly income from her employment with Borders of $1,642.50 with a net of $1,203.20 after deductions for taxes and insurance. That schedule shows a net monthly income, plus Social Security (which was scheduled at $433.00) of $1,636.20.

While the Debtor presently has no income from employment, the Court is obligated to consider not just a snapshot of her current situation but her likely future income based upon her education and employment history. If the Court were to impute to her employment income based on the highest level of income supported by the evidence in the record, which is $21,377.00, it could

5

assume that she would have a monthly gross income of $1,781.42. That is $138.83 more than the monthly gross income from Borders shown on her original Schedule I. Using the same percentage of likely net income after taxes reflected in those figures, the Court can assume that she will retain approximately 80% of that additional income or $111.06. As noted above, the Debtor has received tax refunds in each of the prior two years. Those tax refunds average $1,034.12 which equates to an additional $86.16 in monthly income. Finally, the Court should also add to her income the sum of $40.00 by which the Social Security income was apparently understated and to which it will return after satisfaction of the prior overpayment. Performing these computations yields a net monthly income of $1,873.42.

As it often does, ECMC asked the Court to take judicial notice of the most recent Department of Health and Human Services Poverty Guidelines and observed that the Debtor's household income was, based on her previous employment, significantly above that level. ECMC would apparently have the Court draw the inference that if the Debtor's income is significantly above the poverty level, it cannot be an undue hardship for her to repay her student loan. As this Court has noted before, however, that conclusion did not necessarily follow. This Court and others have observed in the past that a debtor need not live in abject poverty in order to obtain a discharge of student loans and the fact that the household income may not be at or below the poverty level does not preclude a finding of undue hardship. *See Fahrer*, 308 B.R. at 33; *In re Powers*, 235 B.R. 894, 900 (Bankr. W.D. Mo. 1999) (listing poverty guidelines as one factor to consider; not controlling); *see also, e.g., In re Meling*, 263 B.R. 275, 280 (Bankr. N.D. Iowa 2001) (debtor's income just above poverty guidelines, but other factors considered lent to discharge of student loan debt).

### 2. Debtor's Reasonable and Necessary Living Expenses

Debtor's original Schedule J showed expenses of $1,726.82 per month. An amended Schedule J increases that figure to $1,883.17, the change being attributable almost exclusively to the increase in the amount of the monthly payment required on Debtor's adjustable rate home loan. Debtor testified that that amount may increase again at the end of the year, although she was unable to testify to that as a certainty and no amount is suggested by the evidence. The evidence shows that Debtor lives a modest lifestyle. None of the expenses shown on Schedule J appears unreasonable or unnecessary and, in fact, Defendant disputes none of them. There is no other evidence to indicate that the Debtor's monthly expenses are likely to change significantly in the foreseeable future. Accordingly, the Court will assume for purposes of the undue hardship analysis that Debtor's reasonable necessary living expenses are $1,883.17.

### 3. Other Relevant Facts and Unique Circumstances

With the adjustments described above, Debtor's imputed monthly income still falls slightly short of her reasonable necessary monthly expenses. Accordingly, the Debtor is not in a position to make a substantial payment on her student loan. As noted above, the Debtor testified as to her substantial efforts to obtain a job in her field of employment which would presumably be at an income level in excess of what she earned while at Border's. Nonetheless, she has been unsuccessful.

The courts in this district and elsewhere in this circuit have held that in determining whether the debtor is capable of repaying a student loan without undue hardship, it is appropriate to consider any restructuring options available to the debtor. *In re Bray*, 332 B.R. 186, 198 (Bankr. W.D. Mo. 2005); *Pollard v. Superior Community Credit Union (In re Pollard)*, 306 B.R. 637, 653 (Bankr. D.

Minn. 2004); *Rose v. United States Department of Education (In re Rose)*, 227 B.R. 518, 525-526 (W.D. Mo. 1998), *aff'd* 187 F.3d 626 (8th Cir. 1999) (bankruptcy court had to consider debtor's ability to repay, not just over original term of loan, but over 25-year term available as refinancing options). None of the refinancing options available to Debtor, however, afford her any relief. The standard repayment option is available to her pursuant to which her monthly payment would be $564.14. Under the extended repayment option, the monthly payment would be $613.26. Pursuant to the graduated repayment option, the monthly payment for the initial period would be $552.64. Clearly, the Debtor lacks the net income necessary to make any of these payments and would even at her prior level of income.

In addition to the programs mentioned above, Debtor is eligible for participation in the Income Contingent Repayment Plan under which her payments on the consolidated loan would be based on her adjusted gross income, with her payment amount subject to reevaluation each year she was in the program. Defendant argues that the availability of the ICRP means that repayment of the loan, based as it is on her income, cannot by definition constitute an undue hardship. The availability of the ICRP, however, is but one of the factors for the Court to consider in determining whether excepting the debt from discharge would impose an undue hardship on the Debtor. *Fahrer*, 308 B.R. at 35; *Ford,* 269 B.R. 677*; Mulherin*, 297 B.R. at 565 (need full cite); *In re Wilson*, 270 B.R. 290, 294-295 (Bankr. N.D. Iowa 2001). Defendant notes that Debtor was made aware of the ICRP option and chose not to participate, contending this weighs against the Court's finding that repayment of the debt would be an undue hardship. Likewise, however, Debtor's failure to apply for participation in the ICRP is but one factor to weigh in making the decision and is not itself determinative. *Fahrer*, 308 B.R. at 35; *Korhonen v. Educational Credit Management Corporation*

8

*(In re Korhonen)*, 296 B.R. 492, 496 (Bankr. D. Minn. 2003). The Court must also consider the consequence of Debtor's potential participation in the ICRP and the efficacy of that relief. *Fahrer*, 308 B.R. 35. According to the evidence, at an imputed gross income level of $21,377.00, Debtor's monthly payment under the ICRP would be $186.12. According to the Court's determination of Debtor's income and expenses analysis, that is a payment the Debtor cannot afford. Under her current circumstances, her payment might be less, perhaps even $0. If she were to remain unemployed, shackling her to the program would seem a pointless exercise since it would not entail the likelihood of any significant repayment. In addition, as just noted, at an imputed income level equal to her highest adjusted gross income according to the evidence, the ICRP payment is one which she cannot afford with her current level of expense.

Defendant points out that as soon as payments became due on the student loan after acquisition of the Debtor's advanced degree, she consolidated the loans and requested and obtained a deferment. At the end of the deferment period, she filed for bankruptcy having made no payments. While the Court finds this troubling and has reacted differently to similar patterns in other contexts (*see In re Desmond*, 2007 WL 2908899, at *5 (Bankr. W.D. Mo.); *In re Shadwick*, 341 B.R. 6, 14 (Bankr. W.D. Mo. 2006)), the facts of this case do not warrant a finding that the Debtor has not proceeded in good faith. As the Debtor suggests, rather the evidence warrants a finding that the Debtor simply lacks the resources with which to make payments on the loan pursuant to any available repayment option and that this is not likely to change in the foreseeable future. She has, despite reasonable good faith efforts, not been able to find employment in her field of study. She is presently unemployed and even at the imputed income levels equal to those she has experienced in the recent past, she would lack net income with which to make payments on her student loan. In

addition, the Court is convinced that she did not seek relief in this Court for the exclusive or even primary purpose of discharging her student loan. She testified, without contradiction, that at the time she sought assistance from insolvency counsel, she was not aware of the fact that discharge of the loan was possible. While it may have been unreasonably optimistic to expect that a person in her circumstances could repay the substantial amount of student loan debt incurred, the record does not permit the Court to find that she lacked a good faith intention of doing so.

For all the above reasons, the Court finds that repayment of Debtor's student loan indebtedness to ECMC would impose an undue hardship on her pursuant to 11 U.S.C. § 523(a)(8) and it is therefore dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtor to ECMC be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Bankruptcy Rule 9021.


DATED:      November 13, 2007                  /s/ Dennis R. Dow
                                          HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE

Copies to:
William P. Nacy
Larry Bork